THE STATE, EX REL. INTERNATIONAL UNION OF OPERATING ENGINEERS,
LOCAL NOS. 18, 18A, 18B, 18C, 18 RA, AFL-CIO, *v.*
SIMMONS, COUNTY ENGINEER, ET AL.

[Cite as State, ex rel. Internatl. Union of Operating Engineers, *v.* Simmons
(1991), 58 Ohio St. 3d 247.]

(No. 90-518—Submitted November 27, 1990—Decided April 3, 1991.)

*Wuliger, Fadel & Boyer, William Fadel* and *Kathleen M. Sasala,* for relator.

*Michael G. Spahr,* for respondents.

*Per Curiam.* The facts are not in dispute. Respondent county engineer's employees had prior state or political subdivision service, and by reason of R.C. 9.44 were entitled to prior service credit for purposes of computing the amount of their vacation unless the collective bargaining agreement superseded the statute in terms of prior service vacation credit. Respondent refused to grant such credit and he notified each employee of a change in vacation entitlement date. The parties submitted the dispute to binding arbitration and the arbitrator determined that there had been a mutual agreement to a change in terms concerning vacation entitlement dates.

Local 18 concedes that the arbitrator's decision was not procured by corruption or fraud, but even if the arbitrator's award were factually or legally incorrect, it was binding unless modified, corrected or vacated as provided by statute. R.C. 2711.10, 2711.11 and 2711.13.

The Court of Appeals for Cuyahoga County analyzed the applicable statutes correctly in *Huffman* v. *Valleto* (1984), 15 Ohio App. 3d 61, 63, 15 OBR 90, 92, 472 N.E. 2d 740, 743, holding:

"That result may seem inequitable, but any different result would destroy the integrity of binding arbitration. When disputing parties agree to submit their controversy to binding arbitration, they agree to accept the result, even if it is legally or factually wrong. * * * If the parties could challenge an arbitration decision on the ground that the arbitrators erroneously decided legal or factual issues, no arbitration would be binding. Binding arbitration precludes judicial review unless the arbitrators were corrupt or committed gross procedural improprieties. R.C. 2711.10." (Citations omitted.)

The syllabus in *Hillsboro* v. *Fraternal Order of Police, Ohio Labor Council, Inc.* (1990), 52 Ohio St. 3d 174, 556 N.E. 2d 1186, states:

"When a provision in a collective bargaining agreement is subject to more than one reasonable interpretation and the parties to the contract have agreed to submit their contract interpretation disputes to final and binding arbitration, the arbitrator's interpretation of the contract, and not the interpretation of the reviewing court, governs the rights of the parties thereto. * * *"

Both parties cite *State, ex rel. Clark, supra,* the syllabus of which reads:

"R.C. 9.44 imposes a mandatory duty on any political subdivision of the state of Ohio to credit employees with prior service vacation credit, absent a

collective bargaining agreement entered into pursuant to R.C. Chapter 4117 which specifically excludes rights accrued under R.C. 9.44. * * *''

We commented on the *Clark* decision in *State, ex rel. Caspar,* v. *Dayton* (1990), 53 Ohio St. 3d 16, 18-19, 558 N.E. 2d 49, 52: "* * * The vacation provisions in the *Clark* collective bargaining contracts did not specifically exclude R.C. 9.44 rights, and thus, were insufficient to supplant those rights by operation of R.C. 4117.10(A).''

The same cannot be said about the collective bargaining agreement in the instant case. After identifying respondent as "Employer" and Local 18 as "Union," the collective bargaining agreement in relevant part provides:

"ARTICLE 6[:] APPLICATION OF CIVIL SERVICE

"*Section 6.1.* It is the intent of the parties that this Agreement shall govern all matters relating to * * * [the] terms and conditions of employment which were previously covered by Ohio Revised Code Sections 124.01 through 124.56. To the extent permitted by ORC 4117, any term or condition of employment addressed in whole or in part by this Agreement shall supersede and replace in its entirety any civil service provision relating to the same subject * * *.''

"ARTICLE 7[:] GRIEVANCE PROCEDURE

"* * *

"*Section 7.3.* It is the mutual desire of the Employer and the Union to provide for prompt adjustment of grievance[s]. * * *

"* * *

"*STEP 5: Arbitration:* If the grievance is not satisfactorily settled * * *, the Union may make a written request that the grievance be submitted to arbitration. * * *

"* * * The arbitrator shall limit his decision strictly to the interpretation, application, or enforcement of the specific articles or sections of this Agreement * * *.''

"ARTICLE 22[:] VACATION

"*Section 22.1.* Each full-time employee who has completed at least one (1) year of continuous service with the Employer shall be entitled to annual vacation each anniversary year thereafter as follows:

"* * *

"After 1 year of service[,] 10 days.

"* * *

"*Section 22.2.* Employees shall accrue vacation bi-weekly based on their total service upon which their entitlement was based. Employees shall neither accrue nor receive vacation during their first year of full-time service.

"* * *

"*Section 22.3.* Employees shall be entitled to their vacation anytime after their anniversary date of employment * * *.''

The essential substantive question presented is whether the collective bargaining agreement superseded the statutory standard and contained provisions which specifically excluded rights accrued under the statute. The arbitrator found that the subject of vacation entitlement was mutually changed; and that the parties negotiated that issue and resolved it as set forth in the agreement to the exclusion of the statutory standard. In other words, contrary to the contention of Local 18, the arbitrator found that Article 22, interpreted within the framework of Article 6 of the collective bargaining agreement, specifically limits vacation accrual rights to that of continuous service with the employer. This interpretation controls in the instant case. Therefore, relator, having pursued its adequate remedy at law through arbitration, is not entitled to

relitigate the same question by way of mandamus.

Respondents' counterclaim cannot be heard because this court lacks jurisdiction. "We have held that a permissive counterclaim for money damages could not be brought in a mandamus action originating in this court because '* * * neither the Civil Rules nor statutes can expand this court's original jurisdiction and require it to hear an action not authorized by the Ohio Constitution' * * * [Citations omitted].

"Since the Civil Rules cannot override the Constitution, it makes no difference whether a counterclaim outside this court's jurisdiction is compulsory under Civ. R. 13(A) or permissive under Civ. R. 13(B). Both rules are equally impotent to extend this court's jurisdiction." *State, ex rel. Coyne,* v. *Todia* (1989), 45 Ohio St. 3d 232, 237, 543 N.E. 2d 1271, 1276.

The writ of mandamus is denied and respondent's counterclaim is dismissed.

*Writ denied and counterclaim dismissed.*

MOYER, C.J., SWEENEY, HOLMES, WRIGHT, H. BROWN and RESNICK, JJ., concur.

DOUGLAS, J., concurs in judgment only.